## IN THE UNITED STATES DISTRICT COURT
## FOR WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **KRISTIN LEE DISTEFANO-PRESUTTI AND ANGELO ANTHONY RUSSO, JR.,** on behalf of themselves and all others similarly situated, | **FIRST AMENDED CLASS ACTION COMPLAINT** |
| **Plaintiffs,** | **JURY TRIAL DEMANDED** |
| **v.** | |
| **GNC CORPORATION, a Delaware corporation,** | **Case No. 2:13-cv-01100-JFC** |
| **Defendant.** | **Judge Joy Flowers Conti** |

Plaintiffs Kristin Lee Distefano-Presutti and Angelo Anthony Russo, Jr., by and through their attorneys, bring this class action on behalf of themselves and similarly-situated others in the States of Pennsylvania who purchased "TriFlex" health supplements manufactured and marketed by Defendant GNC Corporation ("GNC" or "Defendant"), and state as follows:

### INTRODUCTION AND NATURE OF ACTION

1.     GNC is one of the world's largest retailers of health and wellness products, including vitamins, minerals, supplements, and sports nutrition products.

2.     GNC sells its products in its more than 8,100 worldwide locations and on www.GNC.com, its online website.  GNC has stores in all 50 states and the District of Columbia, including 165 company owned stores and 34 independently owned franchises in the State of Pennsylvania.  Both the company owned stores and franchises sell GNC's proprietary product line, which it manufactures.  In addition to the substantial amount of GNC products sold in its

Pennsylvania stores, GNC ships significant quantities of its products to Pennsylvania residents who purchased those products on GNC's website.

3.      GNC markets, sells and distributes a line of joint health dietary supplements under its "TriFlex" brand name (collectively referred to as the "TriFlex Products").[1]  According to the labels on these products, the purported active ingredients are glucosamine hydrochloride and chondroitin sulfate.

4.      In its uniform, nationwide marketing of the TriFlex Products, GNC promises that its maximum, clinical strength TriFlex Products will help promote mobility and flexibility, improve joint comfort, and cushion joints.  For example, on the label for its TriFlex Fast-Acting Triple Strength Product label GNC claims that the Product's "maximum", "clinical strength" formula supports  "joint comfort," improves joint flexibility and "joint cushioning," and helps to "regenerate cartilage and lubricate joints thus supporting joint health integrity and function."

5.      While Defendants' claims regarding the improved mobility and flexibility purportedly associated with its TriFlex Products are directed at anyone seeking to alleviate joint pain or stiffness, it is particularly directed at people suffering from osteoarthritis.  Indeed, the most common symptoms of osteoarthritis include joint pain, soreness and stiffness—the very symptoms the TriFlex Products claim to remedy.[2]

6.      GNC does not rely solely on its marketing catchphrases to capture purchasers seeking to alleviate the symptoms of osteoarthritis.  Rather, Defendant takes its efforts one step further and employs purportedly neutral scientific analysis in its efforts.  Specifically, GNC's

---

[1] The TriFlex Products include, but are not limited to: (1) GNC TriFlex; (2) GNC TriFlex Fast-Acting; and (3) GNC TriFlex Sport (collectively, "the TriFlex Products" or "the Products"). Plaintiffs reserve the right to include other Products upon completion of discovery.
[2] *See* http://www.webmd.com/osteoarthritis/guide/osteoarthritis-basics (noting that the symptoms of osteoarthritis include "joint aching and soreness," "pain," and "stiffness").

website—one of its key tools in marketing the TriFlex Products—contains a section entitled "Health Notes" in which a supposedly independent review of the scientific literature concludes that "reliable and relatively consistent scientific data showing a substantial health benefit" establishes that glucosamine "has been shown to significantly reduce osteoarthritis symptoms."

7.      As a result of this GNC's marketing campaign directed at persons with osteoarthritis and claiming real, scientifically proven beneifits of the TriFlex Products, persons afflicted with that condition comprise a majority of the purchasers of TriFlex Products.

8.      In truth, however, scientific support for the efficacy of the TriFlex products is utterly lacking.  Study after study has shown that the "active" ingredients in the TriFlex Products are ineffective at treating the symptoms of osteoarthritis, whether taken alone or in combination with the other ingredients in Triflex Products.[3]

9.   Most damning to Defendant's appeal to science, a large scale study sponsored and conducted by the National Institute of Health ("NIH") called the Glucosamine/chondroitin Arthritis Intervention Trial ("GAIT") concluded, in a report published in the New England Journal of Medicine, that "[glucosamine and chondroitin], alone or in combination, was not efficacious. . . ."  Clegg, D., et al., *Glucosamine, Chondroitin Sulfate, and the Two in Combination for Painful Knee Osteoarthritis*, 354 New England J. of Med. 795, 806 (2006).[4]

10.      Thus, in addition to affirmatively misrepresenting the joint health benefits of the TriFlex Products, Defendant's failure to disclose facts regarding these studies also constitutes

---

[3] While most of the clinical studies finding a lack of efficacy were conducted on arthritic patients, others were not.  Nonetheless, experts in the field deem the arthritis clinical studies as proxies for efficacy for all patients.

[4] The GAIT Study was conducted by the National Center for Complementary and Alternative Medicine, which is, according to its website "is the Federal Government's lead agency for scientific research on the diverse medical and health care systems, practices, and products that are not generally considered part of conventional medicine."

deception by omission or concealment.  As a result, Defendant's joint health benefit representations and omissions are false, misleading and reasonably likely to deceive the public.

11.     The misleading representations and omissions by Defendant are conveyed to the consuming public uniformly and through a variety of media including its website and online promotional materials, and also at the point of purchase, where Defendants ensure that the false claims are prominently made on the Triflex Products' packaging and labeling.  In short, Defendants uniform labeling and marketing virtually ensure that the only reason a consumer would purchase the TriFlex Products is to obtain the advertised joint health benefits—benefits that Defendant knows the Triflex Products fail to provide.

12.     As a result of Defendant's deceptive joint health benefit representations, consumers – including Plaintiffs and members of the proposed Class – have purchased Products that do not perform as advertised.

13.     Plaintiffs bring this action on behalf of themselves and all other similarly situated consumers to halt the dissemination of this false and misleading advertising message, correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased the TriFlex Products based on violations of Pennsylvania unfair competition laws and breach of express warranties.  Plaintiffs seek injunctive and monetary relief for all consumers who purchased the Products.

## JURISDICTION AND VENUE

14.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and many members of the Class are citizens of a state different from Defendant.

15.     This Court has personal jurisdiction over GNC because GNC is headquartered in the State of Pennsylvania.

16.     Venue is proper in this Court pursuant to 28 U.S.C. §§1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.  Venue is also proper under 18 U.S.C. §1965(a) because GNC transacts substantial business in this District.

## PARTIES

17.     Plaintiff Kristin Lee Distefano-Presutti resides in Pittsburgh, Pennsylvania and is a resident of Pennsylvania.  During the class period, Ms. Distefano-Presutti purchased TriFlex Products at a store in Pittsburgh in reliance on Defendants' claims on the label and packaging that the products would provide joint health benefits.  Plaintiff Distefano-Presutti paid between $20 and $40 for her purchase.  If Plaintiff Distefano-Presutti was aware that Defendant had both misrepresented the benefits of the TriFlex Products and, in addition, concealed its knowledge of studies demonstrating the lack of efficacy of those products, she would not have purchased TriFlex product she purchased.  Plaintiff Distefano-Presutti used her TriFlex Products as directed and did not receive any of the promised benefits.  As a result, Plaintiff Distefano-Presutti suffered an injury in fact and lost the money associated with her purchase.

18.     Plaintiff Angelo Anthony Russo, Jr. resides in Lawrence County Pennsylvania.

During the class period, Plaintiff Russo purchased TriFlex Fast-Acting at a store in the Pittsburgh area in reliance on Defendants' claims on the label and packaging that the products would provide joint health benefits.  Plaintif Russo paid approximately $37.00 for his purchase. If Plaintiff Russo was aware that Defendant had both misrepresented the benefits of the TriFlex Products and, in addition, concealed its knowledge of studies demonstrating the lack of efficacy of those products, he would not have purchased TriFlexFast-Acting.  Plaintiff Russo used TriFlex Fast-Acting as directed and did not receive any of the promised benefits.  As a result, Plaintiff Russo suffered an injury in fact and lost the money associated with his purchase.

18.     Defendant GNC Corporation is a corporation organized and existing under the laws of the state of Delaware and headquartered in Pittsburgh, Pennsylvania.  GNC is the largest supplement retailer in the United States, operating over 4,800 retail locations in the country (and more than 8,000 internationally) and www.gnc.com, its website where it also sells its products, including the TriFlex Products.

## ALLEGATIONS

### The TriFlex Products

19.     This lawsuit concerns the products marketed and sold by GNC under the "TriFlex" product brand including, but not limited to: (1) GNC TriFlex; (2) GNC TriFlex Fast-Acting; (3) GNC TriFlex Sport; and (4) GNC TriFlex Mobility (all listed and unlisted products referred to herein, collectively, as the "TriFlex Products").[5]   These products come in a variety of dosages and sizes, so the total number of products sold by GNC that fall within these categories is approximately 15-20, on information and belief.

---

[5] Plaintiffs reserve the right to include other products upon completion of discovery.

6

20.     Since launching the TriFlex Products, GNC has employed a marketing strategy that promotes the purported "maximum", "clinical" strength formulas using active ingredients glucosamine hydrochloride and chondroitin sulfate that, if used properly, will promote flexibility, improve "joint comfort," and cushion joints   GNC's representations regarding the alleged benefits of the active ingredients in TriFlex products are false and have been demonstrated as such by scientific analysis.

21.     Defendant's TriFlex Products also contain other ingredients that GNC claims provide health benefits, including: methylsulfonylmethane ("MSM"); hyaluronic acid; "a joint cushioning sports blend" (consisting of white willow bark, boswellia serrata, MSM, hyaluronic acid and hops cones extract); and "a fast-acting comfort blend" (consisting of Chinese skullcap root extract and clutch tree wood & bark extract).[6]  These ingredients also fail to provide any of the benefits alleged by GNC.

22.      Other TriFlex Products' packaging contain additional representations regarding the products' efficacy that are false For example, GNC Triflex caplets are packaged in a bottle that states that the "maximum strength" formulas, help promote mobility and flexibility. Similarly the TriFlex Sport packaging notes that the active ingredients "protect[] joints from wear and tear of exercise," and contain a compound that promotes "joint cushioning."  Below is the label from the TriFlex Sport bottle:

---

[6] Clutch tree wood & bark extract is also known as black catechu.



23.     The TriFlex Complete Vitapak states that the "Comprehensive Vitapak program
… rebuilds cartilage and lubricates joints."  On the side of the same packaging it reads "GNC
TriFlex Vitapak features clinically studied ingredients that support total joint health and provide
joint comfort in as early as two weeks.  These ingredients support mobility and flexibility,
rebuild cartilage and lubricate joints."  In addition, the packaging states that "glucosamine and
chondroitin help preserve joint function and rebuild cartilage.  It combines two important
structural components of joint cartilage, MSM and hyaluronic acid (HA) which helps with
cushioning joints and maintains the elastic integrity of skin."

24.     Other GNC TriFlex products make similar false and misleading claims that they
rebuild or assist the body in regenerating cartilage.

25.     The TriFlex Fast-Acting bottle is also very detailed and references a study that,
allegedly, supports Defendant's "Clinical Strength" representation.  Tellingly, no information is
included anywhere on the labeling or other advertising that would permit a purchaser to verify
that claim.  Specifically, the TriFlex Fact-Acting packaging makes a claim that the active
ingredients are effective in improving joint comfort and function.  In addition the TriFlex Fast-

Acting bottle also represents that "[s]cientific research" has shown that glucosamine and chondroitin "help to support the body's natural ability to regenerate cartilage and lubricate joints thus supporting joint health integrity and function" without providing information identifying the "research" at issue.  The TriFlex Fact-Acting packaging also claims that "scientific research" has shown that the active ingredients "support the body's natural ability to regenerate cartilage and lubricate joints thus supporting joint health integrity and function."  Below is an image of the packaging of TriFlex Fact-Acting:



26.     Other GNC products also parrot the claims that the products are effective in treating osteoarthritis symptoms.

27.     On information and belief, much of GNCs sales are driven by its website, on which customers can both learn about GNC products and, in fact, purchase products directly from GNC.  On its website, on the page detailing *every* TriFlex Product, GNC has inserted a section containing "Health Notes."  When the prospective purchaser clicks on that section, he or she is informed that the information they are about to view is "scientific independent research"

provided by an outside vendor, Aisle 7, which is intended to suggest impartiality and independence.

28.     The "Health Notes" section contains alleged uses of the TriFlex Products with a one to three "star rating" that, supposedly, indicates the level of scientific support for the various uses.  Notably, osteoarthritis is the only "three star" use listed for the TriFlex Products, a rating that allegedly denotes "reliable and relatively consistent scientific data showing a substantial health benefit."  The takeaway for consumers, then, is that glucosamine has been clinically proven, with little or no contrary scientific evidence, to be effective in treating osteoarthritis. Not only is the general claim that glucosamine has been shown by "reliable and relatively consistent scientific evidence" to ameliorate the symptoms of osteoarthritis utterly false, that claim relates to glucosamine sulfate, *a compound that is not included in the TriFlex Products*. Instead, the TriFlex products contain glucosamine hydrochloride, which has also not been shown to provide any health benefits and which is later indicated on the "Health Notes" as having only "minimal or no scientific evidence" supporting the claimed health benefit.  By claiming benefits for a compound that is *not included* in its product but that is similarly named to a compound that is included, GNC has actively deceived consumers into believing that its products provide health benefits that they do not provide.  Below is an image of the "Health Notes" claims that appear for every TriFlex product:

| Used for | Amount | | Why |
|---|---|---|---|
| Osteoarthritis | 1,500 mg daily | ★★★ | Glucosamine sulfate is necessary for joint cartilage synthesis and repair. It has been shown to significantly reduce osteoarthritis symptoms and appears to be virtually free of side effects. Learn More |
| Autism | 250 mg with morning and evening meals | ★★☆ | Some autistic children suffer from chronic diarrhea. In one study, supplementing with glucosamine eliminated the diarrhea in five of six children with autism, possibly by blocking the effect of certain dietary components on the intestinal tract. Learn More |
| Brittle Nails | 1,500 mg daily | ★★☆ | One doctor has observed that taking glucosamine sulfate can increase the nail growth and strength. Learn More |
| Diarrhea | 250 mg with morning and evening meals | ★★☆ | Some autistic children suffer from chronic diarrhea. In one study, supplementing with glucosamine eliminated the diarrhea in five of six children with autism, possibly by blocking the effect of certain dietary components on the intestinal tract. Learn More |
| Osteoarthritis | Refer to label instructions | ★☆☆ | **as Glucosamine Hydrochloride**<br>Studies have shown glucosamine hydrochloride to be effective at reducing pain and improving symptoms in people with osteoarthritis. Learn More |
| Rheumatoid Arthritis | Refer to label instructions | ★☆☆ | Taking glucosamine hydrochloride improved pain in people with rheumatoid arthritis in one study. Learn More |
| Sprains and Strains | Refer to label instructions | ★☆☆ | Glucosamine sulfate may promote healing after injury by providing the raw material needed by the body to manufacture molecules found in skin, tendons, ligaments, and joints. Learn More |
| Wound Healing | Refer to label instructions | ★☆☆ | **as Glucosamine Sulfate Oral**<br>Supplementing with glucosamine sulfate may promote wound healing by providing the raw material needed by the body to manufacture connective tissue. Learn More |

**Multiple Clinical Studies Demonstrate That TriFlex Products Are Ineffective**

29.     Defendant GNC's representations about the efficacy of the ingredients in the

TriFlex products are totally contradicted by all credible scientific evidence.  Indeed, since 2004,

multiple clinical studies have found that glucosamine and chondroitin, alone or in combination,

are not effective in providing the represented joint health benefits.

11

30.     In 2004, one study concluded that glucosamine was no more effective than a placebo in treating the symptoms of knee osteoarthritis.  McAlindon et al., *Effectiveness of Glucosamine For Symptoms of Knee Osteoarthritis: Results From an Internet-Based Randomized Double-Blind Controlled Trial*, 117(9) Am. J. Med. 649 (Nov. 2004).

31.     Indeed, as early as 2004, other clinical studies indicated a significant "placebo" effect when patients consumed products they were told had the potential to cure joint aches and pains.  For example, one 2004 study involved a six-month study of the effects of glucosamine compared with placebo and concluded that there was no difference in primary or secondary outcomes between the two.  Cibere et al., *Randomized, Double-Blind, Placebo-Controlled Glucosamine Discontinuation Trial In Knee Osteoarthritis*, 51(5) Arthritis Care & Research 738-45 (Oct. 15, 2004).  The authors concluded that the study provided *no evidence* of symptomatic benefit from continued use of glucosamine and that perceived benefits were, in fact, due to the placebo effect and not any real benefit provided by glucosamine.  *Id.*

32.     In 2006, the first GAIT study concluded that "[t]he analysis of the primary outcome measure did not show that either supplement, alone or in combination, was efficacious." 2006 GAIT Study at 806.  Subsequent GAIT studies in 2008 and 2010 reported that glucosamine and chondroitin did not rebuild cartilage[7] and were otherwise ineffective – even in patients with moderate to severe knee pain for which the 2006 GAIT study reported results were inconclusive. *See* Sawitzke, A.D., et al., *The Effect of Glucosamine and/or Chondroitin Sulfate on the Progression of Knee Osteoarthritis: A GAIT Report*, 58(10) J. Arthritis Rheum. 3183–91 (Oct.

---

[7] To a similar effect a study concluded that glucosamine was not effective in preventing the worsening of cartilage damage.  Kwok, et al*., The Joints On Glucosamine (JOG) Study: A Randomized, Double-Blind, Placebo-Controlled Trial To Assess The Structural Benefit Of Glucosamine In Knee Osteoarthritis Based On 3T MRI*, 60 Arthritis Rheum 725 (2009).

2008); Sawitzke, A.D., *Clinical Efficacy And Safety Of Glucosamine, Chondroitin Sulphate, Their Combination, Celecoxib Or Placebo Taken To Treat Osteoarthritis Of The Knee: 2-Year Results From GAIT*, 69(8) Ann Rhem. Dis. 1459-64 (Aug. 2010).

33.    The GAIT studies are consistent with the reported results of other studies that have demonstrated the ineffectiveness of both glucosamine and chondroitin.

- In 2008, a study concluded that glucosamine was no better than a placebo in reducing either the symptoms or progression of hip osteoarthritis.  Rozendaal et al., *Effect of Glucosamine Sulfate on Hip Osteoarthritis*, 148 Ann. of Intern. Med. 268-77 (2008)

- A 2010 a meta-analysis examined prior studies involving glucosamine and chondroitin, alone or in combination, and reported that the collection of studies supported a conclusion that those compounds neither reduced joint pain nor had an impact on the narrowing of joint space.  Wandel et al., *Effects of Glucosamine, Chondroitin, Or Placebo In Patients With Osteoarthritis Or Hip Or Knee: Network Meta-Analysis*, BMJ 341:c4675 (2010).

- Another 2010 study concluded that there was no difference between placebo and glucosamine for the treatment of low back pain and lumbar osteoarthritis and that there was no data recommending the use of glucosamine. Wilkens et al., *Effect of Glucosamine on Pain-Related Disability in Patients With Chronic Low Back Pain and Degenerative Lumbar Osteoarthritis*, 304(1) JAMA 45-52 (July 7, 2010).

- In 2011, a summary article reviewed the available literature and concluded that "[t]he cost-effectiveness of these dietary supplements alone or in combination in the treatment of OA has not been demonstrated in North America." Miller, K. and Clegg, D., *Glucosamine and Chondroitin Sulfate*, Rheum. Dis. Clin. N. Am. 37 (2011) 103-118.

- Most recently, a meta-analysis synthesized all available studies evaluating the efficacy of glucosamine for treating osteoarthritis and concluded that glucosamine showed *no pain reduction benefits* for osteoarthritis.  Wu D. et al., *Efficacies of different preparations of glucosamine for the treatment of osteoarthritis: a meta-analysis of randomised, double-blind, placebo-controlled trials*, 67(6) Int. J. Clin. Pract. 585-94 (June 2013).

34.     Scientific studies have also shown that the other ingredients in the TriFlex Products are similarly ineffective. *See, e.g.*, S. Brien, *et. al.*, *Systematic Review Of The Nutritional Supplements (DMSO) And Methylsulfonylmethane (MSM) In The Treatment Of Osteoarthritis*, 16 Osteoarthritis and Cartilage, 1277 (Nov. 2008); Usha PR and Naidu MU, *Randomised, Double-Blind, Parallel, Placebo-Controlled Study of Oral Glucosamine, Methylsulfonylmethane and their Combination in Osteoarthritis*, 24 Clinical Drug Investigation 353-63 (2004); *see also* Biegert C et al., *Efficacy and Safety of Willow Bark Extract in the Treatment of Osteoarthritis and Rheumatoid Arthritis: Results of 2 Randomized Double-Blind Controlled Trials*, Journal of Rheumatology. 31.11 (2004):2121-30 (no efficacy for willow bark as compared with placebo and willow bark less effective than low dosages of non-steroidal anti-inflammatory); *see also* Abdel-Tawb, M., et al., *Boswellia Serrata: An Overall Assessment Of In Vitro, Preclinical, Pharmacokinetic And Clinical Data*, 50 Clin Pharmacokinet. 349-69 (2011).

35.     GNC's claims that the TriFlex Products rebuid or regenerate cartilage are also totally belied by the available scientific evidence:

- In October 2008, the GAIT Study also concluded that glucosamine and/or chondroitin, alone or in combination, did not demonstrate a clinically important difference in joint space loss, indicating that they were ineffective in rebuilding or regenerating cartilage. Sawitzke et al., *The Effect of Glucosamine and/or Chondroitin Sulfate on the Progression*

14

*of Knee Osteoarthrits, A Report from the Glucosamine/Chondroitin Arthritis Intervention Trial*, 58 Arthritis Rheum. 3183-3191 (2008).

- In April 2009, the Journal of Orthopaedic Surgery published an article that concluded that there was scant evidence to support a clam that glucosamine was superior to placebo in even arresting the deterioration of cartilage, to say nothing of arresting that process and promoting regeneration or rebuilding.  Kirkham, et al., *Review Article: Glucosamine*, 17(1) Journal of Orthopaedic Surgery 72-6 (2009).

**GNC Harms Consumers By Continuing To Market And Sell TriFlex Products**

36.     Undeterred by the weight of scientific evidence demonstrating that the ingredients in TriFlex Products are wholly ineffective, Defendant conveyed and continues to convey one uniform message:  TriFlex Products, with their "maximum", "clinical" strength formulas help to promote mobility and flexibility, improve "joint comfort," and cushion joints.

37.     As the manufacturer and/or distributor of the TriFlex Products, Defendant possesses specialized knowledge regarding the efficacy of the ingredients contained in its Products and, moreover, is in a superior position to, and has, learned of the lack of efficacy for all of the key ingredients in the TriFlex Products.

38.     Specifically, Defendant knew, but failed to disclose, that the TriFlex Products do not provide the joint health benefits represented and that well-conducted, clinical studies have found the ingredients in the TriFlex Products to be ineffective in providing the joint health benefits represented by Defendant.

39.     Plaintiffs and Class members have been and will continue to be deceived or misled by Defendant's deceptive joint health benefit representations.  Plaintiffs purchased and consumed TriFlex Products during the Class period and in doing so, read and considered the

15

Products' label and based their decision to purchase the Products on the joint health benefit representations on the Products' packaging.  Defendant's joint health benefit representations and omissions were a material factor in influencing Plaintiffs' decision to purchase and consume the TriFlex Products.

40.     Other than obtaining the benefits that the TriFlex Products promise but do not deliver, there is no other reason for Plaintiffs and the Class to have purchased the Products as the Products are not represented to provide any other benefits and Plaintiffs and the Class would not have purchased the Products had they known Defendant's joint health benefit statements were false and misleading and that clinical cause and effect studies have found the ingredients to be ineffective for the represented joint health benefits.

41.     As a result, Plaintiffs and the Class members have been injured in fact in their purchases of the TriFlex Products in that they were deceived into purchasing Products that do not perform as advertised.

42.     Defendant, by contrast, reaped enormous profit from its false marketing and sale of the TriFlex Products.

## CLASS DEFINITION AND ALLEGATIONS

43.     Plaintiffs Kristin Lee Distefano-Presutti, Angelo Anthony Russo, Jr. bring this action on behalf of themselves and all other similarly situated Pennsylvania residents pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following Class:

**Pennsylvania Class**

All consumers who, within the applicable statute of limitations period, purchased GNC's TriFlex Products in Pennsylvania.

Excluded from the Class are GNC, its parents, subsidiaries,

affiliates, officers and directors, and those who purchased the
TriFlex Products for resale.

44.     The members of the Class are so numerous that joinder of all members of the
Class is impracticable.  Plaintiffs are informed and believe that the proposed Class contains
thousands of purchasers of the TriFlex Products who have been damaged by GNC's conduct as
alleged herein. The precise number of Class members is unknown to Plaintiffs.

45.     This action involves common questions of law and fact, which predominate over
any questions affecting individual Class members.  These common legal and factual questions
include, but are not limited to, the following:

    (1)     whether the claims discussed above are true, or are misleading, or
objectively reasonably likely to deceive;

    (2)     whether GNC's alleged conduct violates public policy;

    (3)     whether the alleged conduct constitutes violations of the laws asserted;

    (4)     whether GNC engaged in false or misleading advertising;

    (5)     whether Plaintiffs and Class members have sustained monetary loss and
the proper measure of that loss; and

    (6)     whether Plaintiffs and Class members are entitled to other appropriate
remedies, including corrective advertising and injunctive relief.

46.     Plaintiffs' claims are typical of the claims of the members of the Class because,
inter alia, all Class members were injured through the uniform misconduct described above
having been exposed to GNC's false representations regarding the efficacy of the TriFlex
Products.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves
and all members of the Class.

47.     Plaintiffs will fairly and adequately protect the interests of the members of the Class, have retained counsel experienced in complex consumer class action litigation, and intend to prosecute this action vigorously.  Plaintiffs have no adverse or antagonistic interests to those of the Class.

48.     A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against GNC.  It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts and would also increase the delay and expense to all parties and the courts.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

49.     Plaintiffs seek preliminary and permanent injunctive and equitable relief on behalf of the entire Class, preventing GNC from further engaging in the acts described and requiring GNC to provide full restitution to Plaintiffs and Class members.

50.     Unless a Class is certified, GNC will retain monies received as a result of its conduct that were taken from Plaintiffs and Class members.  Unless a Class-wide injunction is issued, GNC will continue to commit the violations alleged, and the members of the Class and the general public will continue to be deceived.

51.     GNC has acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

**COUNT I**
**Violation of Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.***
**(All Plaintiffs)**

52.     Plaintiffs repeat the allegations in the foregoing paragraphs as if fully set forth herein.

53.     Plaintiffs bring this Count I individually and on behalf of the members of the Class and Subclasses against all Defendants.

54.     The TriFlex Products are consumer products as defined in 15 U.S.C. § 2301(1).

55.     Plaintiffs and the Pennsylvania Class members are consumers as defined in 15 U.S.C. § 2301(3).

56.     Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

57.     In connection with the sale of the Triflex Products, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6) on the product packaging and in various advertisements and promotional materials by making Express Warranties that the Triflex Products: (1) promote joint mobility and flexibility; (2) alleviate the symptoms of osteoarthritis, including pain, stiffness and other discomfort; (3) regenerate cartilage in joints effected by osteoarthritis, thereby alleviating symptoms.

58.     In fact, the Triflex Products do not conform to the Express Warranties because each of the Express Warranties is false and misleading.  In fact, each of the Express Warranties stands in contrast to independent, clinical research that has shown that none of the Express Warranties are scientifically supported or valid.  Specifically, clinical studies have shown that

19

the "active ingredients" in the TriFlex Products are no more effective than placebo in alleviating the pain, stiffness and other discomfort associated with osteoarthritis and, in addition, do not stimulate the growth of cartilage.

59.     By reason of Defendant's breach of warranties, Defendant violated the statutory rights due Plaintiffs and the Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*, thereby damaging Plaintiffs and the Class members.

60.     Plaintiffs and the Class members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Triflex Products if they had known the truth about the Triflex Products, and would not have paid a premium price for worthless dietary supplements.

## COUNT II
### Violation of Pennsylvania Unfair Trade Practices and Consumer Protection Law
### (Pennsylvania Class)

61.     Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

62.     Plaintiffs Kristin Lee Distefano-Presutti and Angelo Anthony Russo, Jr. bring this claim individually and on behalf of the Class.

63.     Defendant engaged in unfair and deceptive acts and practices, in violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Stat. § 201-1 *et seq.*

64.     Specifically, Defendant (1) represented that the Triflex Products would improve joint health, alleviate the symptoms of osteoarthritis, and regenerate or rebuild cartilage when there was scant or no scientific evidence supporting such claims; (2) sold the TriFlex Products using the aforementioned false representations to generate sales while failing to investigate or properly testing the products to ensure that the representations were accurate; (3) continued to

sell the TriFlex Products after scientific evidence undermining the false represenations became known.

66.     The unfair and deceptive actions of Defendant were done in the course of retail business, trade and commerce.  Further, a negative impact on the public interest was caused by Defendant's conduct.

66.     Damages in the form of the price paid by the Class for the TriFlex Products were suffered by consumers as a result of Defendant's actions.

67.     The actions of Defendant were taken willfully, knowingly, or in reckless disregard of the interests of consumers, thereby justifying the award of punitive damages under various state statutes.  Specifically, defendants either deliberately concealed, or were willfully blind to, facts relevant to the question of whether the products it sold would perform as advertised and warranted.

**COUNT III**
**Breach of Express Warranty**
**13 Pa. Cons. Stat. Ann. § 2313**
**(Pennsylvania Class)**

68.     Plaintiffs repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

69.     Plaintiffs Kristin Lee Distefano-Presutti and Angelo Anthony Russo, Jr. bring this claim individually and on behalf of the Class.

70.     The Uniform Commercial Code Section 2-313 provides that an affirmation of fact or promise, including a description of the goods, becomes part of the basis of the bargain and creates an express warranty that the goods shall conform to the promise and to the description.

71.     At all times, Pennsylvania has codified and adopted the provisions the Uniform Commercial Code governing the express warranty of merchantability.  *See* 13 Pa. Cons. Stat.

Ann. § 2313(a)(1) (West) (expressly incorporating the language of the UCC and stating that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise").

72.     GNC expressly warranted that TriFlex Products were effective in treating osteoarthritis and other joint pain in its advertisement, labeling and online advertising, including, *inter alia*, stating that TriFlex Products promote mobility and flexibility, improve "joint comfort," and cushion joints.  In addition, GNC expressly warranted—and backed up that warranty using an appeal to "scientific data"—that the TriFlex products were efficacious in treating osteoarthritis.  These representations became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promises.  Plaintiffs Kristin Lee Distefano-Presutti and Angelo Anthony Russo, Jr. placed importance on GNC's joint health benefit representations and purchased the TriFlex products based on those representations.

73.     All conditions precedent to GNC's liability under this contract have been performed by Plaintiff [NAME].

74.     GNC was provided notice of these issues by the letter hand-delivered to GNC on behalf of Plaintiffs Kristin Lee Distefano-Presutti and Angelo Anthony Russo, Jr. on July 29, 2013.

75.     GNC breached the terms of this contract, including the express warranties, with Plaintiffs and the Class by not providing Products that would promote mobility or flexibility, improve joint comfort or cushion joints as represented.

76.     As a result of GNC's breach of its contract, Plaintiffs and the Class have been damaged in the amount of the price of the Product they purchased.

22

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for a judgment:

A.      Certifying the Class as requested herein;

B.      Awarding Plaintiffs and the proposed Class members damages;

C.      Awarding restitution and disgorgement of GNC's revenues to Plaintiffs and the proposed Class members;

D.      Awarding injunctive relief as permitted by law or equity, including enjoining GNC from continuing the unlawful practices as set forth herein, and directing GNC to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

E.      Ordering GNC to engage in a corrective advertising campaign;

F.      Awarding statutory and punitive damages, as appropriate;

G.      Awarding attorneys' fees and costs; and

H.      Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial of their claims by jury to the extent authorized by law.

Dated: September 10, 2013

Respectfully submitted,

/s/ R. Bruce Carlson                                                        /s/ Edwin J. Kilpela, Jr.

| | |
|---|---|
| R. Bruce Carlson | Benjamin J. Sweet |
| Gary F. Lynch | Edwin J. Kilpela, Jr. |
| Stephanie K. Goldin | DEL SOLE CAVANAUGH STROYD LLC |
| Jamisen A. Etzel | 200 First Avenue, Suite 300 |
| CARLSON LYNCH LTD | Pittsburgh, PA 15222 |
| PNC Park | Tel: (412) 261-2393 |
| 115 Federal Street, Suite 210 | Fax: (412) 261-2110 |
| Pittsburgh, PA 15212 | |
| Tel: (412) 322-9243 | |
| Fax: (412) 231-0246 | |